UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL LEON COLEMAN,

       Plaintiff,

v.                                             Case No. 2:10-cv-287
                                             HON. ROBERT HOLMES BELL

ROBERT NAPLES, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff Samuel Leon Coleman, an inmate currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Robert Naples, Jeffrey C. Stieve, M.D., Correctional Medical Services, Inc. (CMS), Prison Health Services, Inc. (PHS), Karl W. Ayers, M.D., Michael R. Engelsgjerd, M.D., Nurse Practitioner Penny Rogers, Nurse Practitioner RaeAnn Brand, Nurse Practitioner Jan H. Prokosch-Graves, Larry Hill, R.N., Sandra Shuker, R.N., Michael T. Grant, R.N., and Unknown Parties.

       Plaintiff's complaint alleges that from 1998 to 2000, he complained to Health Services about external and internal hemorrhoids, ulcers around the lower stomach area, a hernia in the mid to lower stomach, and damage to his right knee. Plaintiff claims that from December of 2008, until the present date, his medical condition became life threatening, causing permanent damage to his stomach lining and small intestine. In addition, the lack of care provided for Plaintiff's knee has resulted in permanent damage to the cartilage and knee cap. In April of 2009,

a referral form was issued, requesting surgery to remove Plaintiff's hernia, which "goes from the mid stomach to the lower stomach, into the small intestine." The request was denied.

Plaintiff states that he begged health care staff to provide him with surgery for his hernia, hemorrhoids, and right knee, to no avail. Plaintiff then filed grievances, which were denied. Plaintiff asserts that he is considered a chronic care patient, and that pursuant to the chronic care policy health care providers are only allowed to discuss the chronic care issue during chronic care appointment time. Therefore, Plaintiff was not allowed to discuss his hernia or right knee during his six month chronic care appointments. Plaintiff seeks compensatory, punitive and exemplary damages.

Presently before the Court are the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket ##30, 33, and 41). Plaintiff has responded to the motions (docket ##49-52) and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

- 2 -

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I

grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

It appears that between October 27, 2007, and October 27, 2010, Plaintiff filed five grievances which he appealed to step III. (Grievance Inquiry Screen, Defendants' Exhibit A, docket #41-2.) In Grievance HTF-08-04-00279-12e, Plaintiff asserted that he was suffering from a hot burning sensation in his stomach and that he was having pains below his belt line. Plaintiff stated that it had taken three months for the Nurse Practitioner to call him out to be evaluated, which denied him adequate medical treatment. (Defendants' Exhibit B-1, docket #41-3.) In Grievance MBP-09-112-03108-12d1, Plaintiff stated:

> On 12/7/09 I received my Health Care Request form dated: 12/4/09 back from Health Care, stating I am scheduled for an appointment on: 12/7/09. As of today: 12/13/09, I still have not been called to Health Care for the scheduled 12/7/09 appointment. I am being DENIED Medical Treatment. I stated on the Health Care Request Form: I am still having problems with my stomach and the pains will not go away. This BIG KNOT in my stomach seems to be Hot and Burning. Also, my Hemmorrhoids are flaring up and it's painful. Health Care Personnel continue to ignore my health problems and I have also told Health Care Personnel that Dr. Birch told me while at Standish Maximum Facility during the month of September 2009 that I also have Ulcers in my stomach as well as the Big Knot, and if I do not get some Medical help soon, the Ulcers will turn into Cancer. I think that I already have Cancer and I am not being told about it and that is why I am being shunned.

(Defendants' Exhibit B-2, docket #41-4.)

In Grievance MBP-10-02-00339-12d1, Plaintiff asserts that a health care request was returned to him for allegedly failing to sign it, which denied him medical attention and treatment. Plaintiff states that he attempted to resolve the issue by talking to Nurse Mike [Grant]. (Defendants' Exhibit B-3, docket #41-5.) In Grievance HTF-09-03-00167-12d1, Plaintiff states that on March 19, 2009, he arrived at Health Services at 12:12 p.m. for a 12:00 to 12:30 doctor appointment. At

approximately 12:25 p.m., Defendant Ayers came to the hallway and called Plaintiff's name. Defendant Ayers told Plaintiff that he could not see him because he had been late. Defendant Ayers told Plaintiff that he had called him at 12:15 and that Plaintiff had not been there. Plaintiff said that was not true, that he had been present at 12:15. Defendant Ayers did not respond, but merely refused to see Plaintiff. (Defendants' Exhibit B-4, #42-1.) In Grievance HTF-09-06-00362-12z, Plaintiff named the "MDOC Medical Director." Plaintiff stated that the medical provider at HTF had put in a request for Plaintiff to have surgery for a possible hernia, but that the request was denied by the MDOC Medical Director and the MDOC Director in order to save money. (Defendants Exhibit B-5, docket #42-2.)

A review of these grievances reveals that of the named Defendants in this case, the only individuals named in step I of the above grievances are Defendant Ayers, Defendant "Nurse Practitioner" [Penny Rogers], and Defendant Nurse Michael Grant. Therefore, Defendants Naples, Stieve, CMS, PHS, Engelsgjerd, Brand, Prokosch-Graves, Hill, and Shuker are entitled to dismissal without prejudice for failure to exhaust administrative remedies.

Moreover, the court concludes that Defendants are entitled to summary judgment on the merits of Plaintiff's claims because Defendants were not deliberately indifferent to Plaintiff's serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

>  order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In the step II response to Grievance HTF-08-04-000279-12e2, which refers to Defendant Rogers, Jeannie Stephenson, R.N., states that the waiting list for the Medical Provider is reviewed daily and triaged according to the patients' medical needs. Plaintiff was seen and evaluated by the Medical Provider on April 10, 2008, for complaints of rectal pain and abdominal hernia. Plaintiff refused a rectal exam and an abdominal binder [truss] for the hernia. Anusol suppositories were ordered for Plaintiff, as was an x-ray of the abdomen. Finally, R.N. Stephenson noted that although there had been a delay in Plaintiff's Medical Provider appointment, there was no indication that the delay had a negative impact on Plaintiff's overall well-being. (Defendants' Exhibit B-1, p. 4, docket #41-3.)

In the step I response to Grievance MBP-10-02-00339-12d1, which names Defendant Grant, Defendant Grant stated that Plaintiff was interviewed on February 22, 2010, and that his medical chart showed no health care requests for stomach complaints. Defendant Grant noted that Plaintiff was being treated for a diagnosis of reflux and was recently treated for H-Pylori. (Defendants' Exhibit B-3, p. 5, docket #41-5.) The step II response stated that electronic medical record review showed that there were no health care requests submitted on the date indicated and

that Plaintiff had been seen by the Medical Provider on March 2, 2010, for a complaint of abdominal discomfort from his hernia. A ventral hernia was noted that was easily reduced. Plaintiff was told that his hernia would not be surgically repaired in its current state and he was encouraged to wear his abdominal binder at all times. (Defendants' Exhibit B-3, p. 4, docket #41-5.)

In the step I response to Grievance HTF-09-03-00167-12D1, which refers to Defendant Ayers, G. Covert states:

> Investigation reveals and the healthcare documentation reflects that the patient was not present at 1200 for his Medical Practitioner appointment on March 27, 2009, in regards to the burning in stomach. The MP upon finding no patient available at the appointed time charted the patient as a no show. The patient at today's interview was offered another appointment with the MP but refused. The patient is encouraged to show up at the correct time for all appointments. The patient is receiving appropriate care.

(Defendants' Exhibit B-4, p. 6, docket #42-1.) The step II response indicates that Plaintiff was not present for his medical appointment on March 19, 2009, and that he was seen and evaluated on March 24, 2009, for his cardiac and gastrointestinal chronic care visit. (Defendants' Exhibit B-4, p. 4.)

Plaintiff alleges that the only proper treatment for his type of hernia is surgery and that the "truss brace" prescribed by Defendants was "worthless." (Plaintiff's complaint, ¶¶ 42 and 71, docket #1.) Plaintiff states that in April of 2009, Defendants Ayers, Rogers and Brand submitted a "407 referral form requesting surgery for his hernia," which stated:

> Large Periumbilical ventral hernia [with] new [symptoms] of increased [abdominal] pain and tenderness [with] BM's and bowel changes, i.e. constipation. Not incarcerated, reducible. Labs nonanemic. [Past medical history] [hypertension], [costovetebral angle] hyperlipidemia and GERD.

(Plaintiff's complaint, ¶ 40, docket #1.) Plaintiff disagrees with this medical conclusion, stating "how can a 2" by 6" Hernia be NOT INCARCERATED"?[1] (Plaintiff's complaint, ¶ 71, docket #1.)

Plaintiff further complains that he has been given the following medications, Naproxen 500 mg, Aspirin 81 mg, Prilosec 20 mg, Vasotec 10 mg, Maxzide 75 mg, Zocor 20 mg, and Zantac 150 mg, which worsened his medical conditions of hernia, ulcers, and hemorrhoids. (Plaintiff's complaint, ¶ 44, docket #1.) Throughout his complaint and response to Defendants' motions, Plaintiff insists that the treatment provided by Defendants in this case was ineffective for his condition. As noted above, Plaintiff asserts that Defendants' assessment of his condition was incorrect and that his medical condition continued to be more serious than Defendants concluded based on their evaluation and treatment.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Because it is clear from the record that Plaintiff's dissatisfaction with

---

[1] An incarcerated or irreducible hernia, is a hernia so occluded that it cannot be returned by manipulation; it may or may not be strangulated. *See* http://medical-dictionary.thefreedictionary.com/incarcerated+hernia.

Defendants' conduct is based on the type of treatment rendered, rather than the lack of treatment, Defendants are entitled to summary judgment on Plaintiff's claims.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motions for Summary Judgment.  Accordingly, it is recommended that Defendants' Motions for Dismissal and/or Summary Judgment (Docket #30, #33, and #41) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 22, 2012